IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Purley R. McIlweine,[1] | ) | CIVIL ACTION NO.: 4:07-1117-CMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Major James Harris, Director; | ) | |
| Captain Ronald O'Neil, Administrator; | ) | |
| Captain J. B. Quig, Asst. Administrator; | ) | |
| Lt. Kevin Jones, Officer Supervisor; and | ) | |
| Sgt. Randall Pfannestiel, Classification, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff  filed this action on April 27, 2007, alleging violations of his constitutional rights.[2]  During the time of the matters alleged in his complaint, plaintiff was housed at the Lexington County Detention Center ("LCDC"). On November 17, 2007, the defendants filed a motion for summary judgment along with a memorandum in support of that motion. Because plaintiff is proceeding pro se, he was advised on or about November 19, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint.  The plaintiff filed a response on January 16, 2008. (Document #42).

---

[1] It is noted that plaintiff spells his name on his documents as McIlwaine.

[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges unconstitutional overcrowding, inadequate and unsanitary food, no law library, unsanitary conditions, that inmates are being bitten by spiders, and that inmates are charged a $5.00 co-pay for each sick call visit. (Complaint). Specifically, plaintiff alleges as follows, quoted verbatim:

> I, Purly R. McIlwaine, am allergic to penicillin which mold produces. In Lexington County Detention Center the shower areas are full with mold build-up to which it has produced lack of breath, rashes and upper respiratory problems. I, Purley R. McIlwaine, have been forced to endure severe overcrowding circumstances which in fact create inhumane environments. I, Purley R. McIlwaine, have been forced to eat from food trays that are taken from a food cart and placed on the floor of or in front of cell doors on a daily basis and not monitored by staff at all. I have expressed concerns that I have filed a complete and formal grievance procedure, as well as written various inmate to staff request forms and each time the Administrator officials here at Lexington County Detention Center did not reply in writing, or verbally. With the above captioned issued clauses, I Purely R. McIlwaine, have fully attempted to exhaust any and all Institutional remedies in order to resolve this matter before this court. Also, I , Purley R. McIlwaine, have been abused, disrespected and the Administration is using cruel and unusual punishment and inhumane treatment in the form of dirty exposed and cold food. Bacterial build up on the food directly when temps . reach below a ceratin temp. 2nd to place food trays from the carts to the floor for a period of 20 minutes to a half hour is surely cruel and unusual punishment as well as serious health and food sanitation concerns and violations. Lexington County Detention Center does not have a law library, so when this Honorable court refers to and directs my pro-se cases to "see" case file, I as well as inmates here at the Lexington County Detention Center have not the material to properly represent our conditions rights and study case law necessary to present our cases in the proper form. Lexington County Detention Center also has a cancer causing substance or dust rising from the carpet in units. They have mold and asbestos imbedded into carpet and flooring beneath, which is causing cancer for inmates in Lexington County Detention Center then once asbestos and mold forms respiratory infection, the inmates are then compelled to sign up for sick call which in fact cost $5.00 which is withdrawn from inmate accounts and are given Zantax to coat the stomach and lungs. Various complaints/grievances have been ignored by the administration in the matter, which in fact makes them, Lexington County Detention Center, totally liable for the affects of the continued ignored hazards and becomes willful act of endangerments

2

as well as willful gross negligence and intentional health and safety codes in this State of South Carolina. The food is taken from food carts and placed on the floor between the toilet drain and the asbestos infested carpet prior to serving. Each inmate complains about headaches and stomach problems which is in fact being caused by the above captioned issues. Various inmates have lumps on various parts of their bodies as a result of spider bites. These bites are caused by mold infested/carpet infestation/toilet drains located next to cell doors and they are also treated only by sick call, which cost the inmates $5.00 which is withdrawn from his/her account, and receive no cure. . . . prayed that this Honorable Court will investigate, correct, terminate the individuals involved and award punitive damages to all/any infected inmates.

(Complaint).

Defendants filed a motion for summary judgment asserting that they are all employees of the Sheriff of Lexington County and are all assigned to the LCDC. Defendants argue plaintiff's claim should be dismissed. First, defendants contend at the time of plaintiff's incarceration at the LCDC, he was a pretrial detainee, requiring his claims to be construed pursuant to the Fourteenth Amendment. Next, defendants argue that they are entitled to Eleventh Amendment immunity, that plaintiff has failed to state a claim that the conditions of his confinement at the LCDC violated any of his constitutional rights, that plaintiff has failed to establish any personal involvement on the part of defendants Harris, O'Neil, Quig, Jones, or Pfannenstiel, or any theory of liability upon which these defendants could be responsible for any of the alleged deprivations, that defendants are entitled to qualified immunity, that plaintiff is not entitled to damages for emotional trauma, and that the matter should be dismissed and deemed a strike.

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v.

3

Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

### D.  CONDITIONS OF CONFINEMENT

As previously stated, plaintiff alleges violations of his constitutional rights while housed at the LCDC due to conditions of confinement consisting of overcrowding, unsanitary conditions,

inadequate food delivery, lack of a law library, that "various" inmates have been bitten by spiders, some inmates have developed cancer from the asbestos, that inmates are charged a $5.00 co-pay for medical care, and that there is mold in the buildings which cause him respiratory problems.

Defendants submitted the affidavit of Ronald O'Neill ("O'Neill") who attests that he has worked for the Sheriff of Lexington County for 25 years and currently holds the rank of Captain. O'Neill attests that he is the Inmate Services Commander at the LCDC and does not recall any personal interactions with the plaintiff relevant to the allegations set forth in the plaintiff's amended complaint but is familiar with the allegations. O'Neill attached a copy of plaintiff's medical records from the LCDC to his affidavit.  O'Neill also attests that the plaintiff was incarcerated at LCDC beginning March 31, 2006, until he was released into the custody of the SCDC on May 9, 2007.

Defendants also submitted the affidavit of Joseph B. Quig, III, who attests that he has been employed by the Sheriff of Lexington County for 11 years and currently holds the rank of Captain. Quig attests that he is the Judicial and Support Services Commander at the LCDC and does not recall having any personal interaction with plaintiff during his incarceration relevant to the allegations set forth in the plaintiff's complaint but is familiar with the allegations.

Defendants submitted the affidavit of Kevin Jones who attests that he is employed by the Sheriff of Lexington County and is the manager of Inmate Housing at the LCDC where he has been assigned for approximately twelve years. As manager of the Inmate Housing, he attests that he is responsible for overseeing the habitability of each housing area of the detention center. Jones asserts that the showers are cleaned twice daily, using bleach and Pinesol in addition to the inmates being provided "cleaning time." Jones attests that during cleaning time, in the housing area like the one plaintiff was housed in, inmates are required to sweep, mop, clean their toilet and clean their sink.

6

Further, Jones attests that the common area of each housing unit are cleaned regularly by either inmate workers or run-arounds which are inmates in a particular housing unit. Jones attests that since there are employees working in each housing unit, the units must comply with OSHA requirements and that the entire detention center is inspected by OSHA. Jones asserts that he does not recall having any personal interactions with the plaintiff during his incarceration at the LCDC.

The Administrators for the LCDC contract out for licensed and qualified independent contractors to provide medical services, food services, and pest control services for the inmate population. (Affidavits of O'Neill, Jones and Quig.) The LCDC has a contract with Prison Health Services (PHS) to provide the medical services to the inmate population and PHS is required to employ qualified and licensed medical providers at the LCDC. *Id*. The LCDC contracts with ABL, Inc., to provide all food services to the inmates and, pursuant to contract, ABL is required to provide three nutritionally balanced meals a day to each inmate at the LCDC, and are required to have a licensed dietician prepare the menu, which is then prepared daily by inmate workers under the supervision of ABL employees, and served to the inmate population. *Id*. The LCDC also has a contract with Bugman Pest Elimination, Inc., to provide all pest control services which comes once a month, and/or as needed, to spray the facility and is required to utilize environmentally friendly pesticides that are not harmful or obtrusive to humans. *Id*.

The plaintiff was housed at the LCDC on charges of Entering a Bank with Intentions of Stealing, and was represented by an attorney. (Affidavit of O'Neill). The LCDC is not equipped with a law library but the inmates are allowed access to their attorneys, by appointment, seven days a week. (Affidavits of O'Neill and Quig). Indigent inmates are provided pleading forms, stamps, envelopes, and writing materials to be used to file legal papers. *Id*. Plaintiff was provided writing

7

materials and litigation pleading forms during his incarceration at the LCDC as evidenced by his complaint. *Id*.

With regard to plaintiff's allegations of overcrowding, defendants submit that the inmate population at the LCDC exceeds the design goal for the facility but the inmate population is not overcrowded in the since that the number of inmates does not exceed their capacity to provide security, shelter, food, medical supplies, and other necessary services during their incarceration. *Id*.

With regard to plaintiff's allegations regarding the cleanliness of the shower facilities, they are cleaned twice a day with Clorox bleach and Pinesol. (Affidavits of Quig, O'Neill, and Jones). O'Neill and Quig attest that there is no mold issue in the shower facilities. As to the allegation of asbestos and mold in the carpets and flooring, O'Neill and Quig attest that the newest area of the LCDC was constructed and opened in 1999 and the carpeting was installed new at that time and is cleaned on a regular basis and replaced when necessary. Both attest, that to their knowledge, there is no asbestos present in any area of the detention center where an inmate or staff member could be exposed to it. Further, O'Neill and Quig attest that what is known as the old or original detention center was completely remodeled in, or about 2001, and there is no asbestos present in this area of the jail where an inmate or staff member could be exposed to it. O'Neill and Quig attest that as further evidence that environmentally harmful agents such as asbestos and mold are not present in the LCDC as alleged by the plaintiff, the detention center is regularly inspected by OSHA and has not had any issue in passing the OSHA inspections. O' Neill attests that with regard to plaintiff's allegations in relation to the food being served dirty, exposed and cold and that the trays are placed on the floor before being served to the inmates, the closed pods, those where the inmates are actually sleeping in cells with doors on them, the food is served in insulated trays, which have a top that

closes securely over the food. These enclosed trays are distributed by inmates required to wear hairnets, gloves, and white uniforms with a pod officer or detention officer overseeing the food distribution. *Id*. In the open pods, the food is brought into the pod in a food cart and the inmates come to the cart to take a tray. The trays are not placed on the floor. *Id*. The food service facilities at the LCDC are regularly inspected by DHEC and they have maintained an A rating for at least the past two years. (*Id*. and Exhibit C, DHEC's inspection findings).

With regards to plaintiff's allegations that inmates are charged a $5.00 co-pay for each sick call visit, O'Neill attests that the LCDC has a policy of charging $5.00 to inmates when those inmates are able to pay for each sick call visit in order to offset some of the cost of the medical care provided, and to help reduce the amount of frivolous and abusive uses of the medical sick call system by inmates. (O'Neill's affidavit). However, no inmate is denied needed medical attention, and no inmate is turned away from sick call for lack of funds sufficient to pay the co-pay. *Id*.

A review of plaintiff's medical records reveal that he received substantial amounts of medical care during his incarceration at the LCDC, there is no indication that he had an allergic reaction to Penicillin, and none of his constitutional rights were violated by any employee at the detention center. (Affidavit of O'Neill and Quig and plaintiff's medical records).

Defendants also submitted the affidavit of Sheriff James R. Metts who attests that as part of his duties as Sheriff, he is charged with the administration of the LCDC. Metts attests that he assigned Major James E. Harris as Director of Detention and Judicial Services for Lexington County Sheriff's Department and Major Harris oversees the day-to-day operations of the LCDC under his direction. Metts attests that there is an inmate grievance procedure at the LCDC and it does not appear that plaintiff exhausted his administrative remedies as Major Harris did not review or respond

to an appeal of a grievance by the plaintiff which is required in order to exhaust the inmate grievance procedure. Metts asserts that he employs defendants O'Neill, Quig, Jones, and Pfannenstiel and assigned them to the LCDC. Metts attests that he does not recall ever having any personal interactions with the plaintiff during his incarceration at the LCDC.

In his response in opposition to summary judgment, plaintiff asserts that he "had to endure Mold Infestations , which causes rashes and upper respratorial[sic] disfunction[sic] as well as Lung Cancer, while being detain[ed] in the Lexington County Detention Center." (Document #42). Plaintiff further asserts in his response that "In June 2006, the plaintiff wrote a medical request to staff concerning a boil on inner thigh, by the groin area; which was caused by spider bites." (Document #42).

Plaintiff has submitted allegations of various conditions at the LCDC which he alleges violates his and other inmate's constitutional rights. However, insofar as plaintiff is seeking injunctive relief and/or declaratory relief in this action, since he is no longer housed at the LCDC, any such claims for relief are moot. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987).

Plaintiff does, however, also assert a claim for monetary damages, and damage claims survive an inmate's transfer to another institution. Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977); see also Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994), applying West v. Atkins, 487 U.S. 52 (1988). However, after careful review and consideration of the evidence before this court and arguments presented, the undersigned finds that the evidence is not sufficient to create a genuine

issue of material fact as to whether any named defendants violated plaintiff's constitutional rights.

As stated, confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16.  To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.  Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).  Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering.  Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995).  The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-- even though the conditions imposed serve some ordinarily legitimate state objective."  Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants.  Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S. 949 (1993)).  Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment

11

on prison conditions claim.  _Id._ at 1380-1381.   To survive summary judgment, the plaintiff must show more than de minimis pain or injury.

First, the undersigned notes that the defendants are not medical personnel.  The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct.  Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. _Id._  Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel.

Alternatively, assuming _arguendo_, that plaintiff did suffer with medical problems associated with mold in the LCDC, there is no evidence of a constitutional violation concerning plaintiff's medical care. The plaintiff speculates as to what injuries might have occurred as a result of mold and/or asbestos, such as the  development of a cancer and/or allergic reaction to penicillin.  Such speculation, however, falls short of actual serious or significant injury.  Moseley v. King, 2006 WL 2827555 (D.S.C. 2006).

Based on a review of the records submitted by the defendants, plaintiff completed a sick call request due to a  boil or spots related to spider bites. Further, plaintiff completed a request dated April 24, 2007, in which he requested medical care "due to spider bites, rises and/or boils on my inner thighs and legs that are being caused by mold and bacteria in shower areas." (Document #27-4). Plaintiff was seen by medical on several occasions and prescribed medication including antibiotics for spider bits and/or boils. However, plaintiff  has not alleged or shown any serious or

12

permanent injury as a result of any bites he received while at LCDC. Additionally, plaintiff has not

shown that defendants knew of and disregarded an excessive risk to inmates health and safety. The

LCDC contracts with an exterminating company to spray the facility once a month. (Affidavits of

O'Neill, Jones and Quig).

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth

Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of

pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical
> needs; if the authorities fail to do so, those needs will not be
> met. . . .  We therefore conclude that deliberate indifference
> to serious medical needs of a prisoner constitutes the
> "unnecessary and wanton infliction of pain," Gregg v.
> Georgia, supra, at 173, (joint opinion), proscribed by the
> Eighth Amendment.  This is true whether the indifference is
> manifested by prison doctors in their response to the
> prisoner's needs or by prison guards in intentionally denying
> or delaying access to medical care or intentionally interfering
> with the treatment once prescribed.  Regardless of how
> evidenced, deliberate indifference to a prisoner's serious
> illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note, however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not
> state a valid claim of medical mistreatment under the
> Eighth Amendment.  Medical malpractice does not
> become a constitutional violation merely because the
> victim is a prisoner.  In order to state a cognizable
> claim, a prisoner must allege acts or omissions

13

> sufficiently harmful to evidence deliberate
> indifference to serious medical needs.

Estelle, 429 U.S. at 107.

Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986). In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other
> correctional facility for mental or emotional injury suffered while in custody without a prior
> showing of physical injury.

42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than *de minimis*, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir.1997)(concluding that a sore, bruised ear lasting for three days was *de minimis* and failed to meet the requisite physical injury to

14

support a claim of emotional or mental suffering). Here, as discussed above, the plaintiff has not made such a showing of physical injury which is more than *de miminis*. Accordingly, this claim should be dismissed.

Based on the evidence, there has been no deliberate indifference shown to the medical needs of the plaintiff. Thus, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Therefore, it is recommended that defendants' motion for summary judgment be granted with respect to any medical indifference claims.

Plaintiff's claim of a constitutional violation by defendants charging a $5.00 co-pay fails to set forth a constitutional claim. *See* Hamm v. Riley, 2007 WL 1377611 (D.S.C. 2007) [Plaintiff's claim that the defendants violated his constitutional rights by charging a "co-pay" to indigent detainees also fails to set forth a constitutional claim] *citing* Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 252 (2005) [upholding constitutionality of a one dollar per day charge to pretrial detainees designed to offset the cost of housing of those detainees]; *see e.g.* Reynolds v. Wagner, 128 F.3d 166, 173-174 (3rd Cir. 1997) [deliberate indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society]. In his response in opposition, plaintiff asserts that "being seen by medical and having to pay $5.00 co-pay is not the argument. The plaintiff's argument is receiving keflex, 1000 mg, cipro 500 mg pc, and Percogesic which did not cure the Plaintiff, but rather passified the problem, then recurring to the same area set back in because the Plaintiff was not cured in the first place, therefore he has to pay $5.00 once again." (Response, document #42, p. 3). Thus, plaintiff argues that it is a violation for him to pay a $5.00 co-pay for medical services, receive treatment and medication, and, if he is not "cured," he has to return to medical and pay the co-pay again. This

allegation still fails to set forth a constitutional claim. *Id*.

With respect to plaintiff's complaints concerning overcrowding, the LCDC may have in fact had an excess of inmates during the relevant time period, but that does not mean plaintiff's constitutional rights were violated. Plaintiff has not shown any significant physical or emotional injury as a result of any violation to raise an issue of fact for trial. Plaintiff has failed to show that he has suffered any significant injury as a result of any overcrowding, unsanitary conditions, spider bites, and inadequate food and without any evidence showing an injury as a result of a constitutional violation, no viable 1983 claim has been presented. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985)[the fact that pretrial detainee temporarily had to sleep on a mattress on the floor or on a table "is not necessarily a constitutional violation."].

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether plaintiff was denied the minimal civilized measure of life's necessities, or that any named defendant engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not produced any expert testimony or medical records that show he suffered with or sustained any permanent or significant injury as a result of the allegations in his complaint. Based on the affidavits submitted, the LCDC is inspected by OSHA and DHEC on a regular basis, the administrators at the LCDC have contracted with an independent exterminator to provide regular and professional pest control at the LCDC, the administration has contracted with a food company to provide nutritious meals, and contracted with a company for medical care.  There is no evidence that plaintiff received a serious or significant injury while housed at the LCDC as a result of the allegations raised in his complaint. Plaintiff has not shown that  he was deprived a "basic need" and that these deprivations were

16

attended by deliberate indifference on the part of the defendants.  <u>Strickler</u>, <u>supra</u>  Further, plaintiff has failed to show any express intent on the part of the defendants to punish him. Based on the reasons discussed above, the undersigned recommends that summary judgment for the defendants be granted.

Further, any allegations plaintiff has made regarding other inmates must fail. To state a civil rights claim, one must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by the Constitution of federal law. <u>Inmates v. Owens</u>, 561 F.2d 560, 562-63 (4th Cir. 1977). To demonstrate standing, plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by requested relief. <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).

As to any denial of access to courts claim that plaintiff is intending to bring as a result of not having a law library at the LCDC, this claim must fail.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged.  Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts.  <u>(Pink v. Lester</u>, 52 F.3d 73 (4th Cir. 1995), "negligent denial of access to the courts is not actionable under § 1983." ) A prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts.  <u>White v. White</u>, 886 F.2d 721 (4th Cir. 1989) and <u>Morgan v. Montanye</u>, 516 F.2d 1367 (2d Cir. 1975 ) <u>cert. denied</u>, 424 U.S. 973 (1976).  Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. <u>Lewis v. Casey</u>, 518 U.S.343 (1996). Plaintiff

17

has failed to meet this burden in that he has not alleged or shown that he has suffered any actual injury as a result of the LCDC not having a law library.

Additionally, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system.  See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system.  Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra.  As previously discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the prison and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

## E. GRIEVANCE PROCEDURE

As to any claim concerning the inmate grievance procedure at the LCDC, the complaint in this case fails to state a cause of action under 42 U.S.C. § 1983. It is well settled that prison inmates, including pre-trial detainees, do not have a federal constitutional right to have *any* inmate grievance system at the place where they are incarcerated. See, Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994); furthermore, simply because a state or local authority chooses to establish an inmate grievance

system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees covered by that system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). As a result, even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under section 1983. See Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo.1986); Azeez v. DeRobertis, 568 F.Supp. 8, 9-11 (N.D.Ill.1982).

## F. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the Sheriff of Lexington County at the time of the allegations complained by plaintiff, they are entitled to Eleventh Amendment Immunity.

In Gullege v. Smart, 691 F. Supp. 947 (D.S.C. 1988), the court undertook an analysis of the status of South Carolina sheriffs. Based on the following facts, the court concluded that South Carolina Sheriffs were state officials: (1) the state constitution established the office of sheriff and provided that the General Assembly determines a sheriff's powers and duties; (2) state law sets out the sheriff's duties and compensation; (3) the sheriff's arrest powers relate primarily to state offenses; and (4) the Governor is empowered to fill vacancies or remove the sheriff for misconduct. See Id. at 954. The court also found that deputy sheriffs are more closely connected to the state than the county. See Id. at 955. Deputy sheriffs are agents of the sheriff and "are not employees of the

county and [are] not covered by county personnel policy and procedure." Cone v. Nettles, 417 S.E.2d 523, 525 (S.C.1992).

The case of Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) held that South Carolina Sheriffs are State agents and are not amenable to suit in federal court by virtue of the Eleventh Amendment. Therefore, based on the above, it is recommended that Sheriff Metts and the remaining defendants who are/were employees of the Sheriff of Lexington County are state officials and are not liable for monetary damages in their official capacities.

## G.  QUALIFIED IMMUNITY

Defendants contend that to the extent plaintiff seeks to proceed against them in their individual capacities, the defendants are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as an official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

21

## H.  STATE LAW CLAIMS

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).


## I. RESPONDEAT SUPERIOR

Defendants Harris, O'Neill, Quig, Jones and Pfannenstiel assert that they cannot be held liable as a supervisory official in that plaintiff has not alleged any individual involvement by them.

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).  The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984). Plaintiff has failed to meet this burden in that he has failed to show that defendants were responsible for a policy or custom that resulted in illegal action or that they have been deliberately indifferent to the needs of plaintiff.

## J.  EMOTIONAL DISTRESS

Plaintiff alleges that he is entitled to receive damages for emotional stress due to the conditions alleged in his complaint. Defendants argue plaintiff cannot recover damages for emotional stress as physical injuries are a prerequisite for an award of damages for emotional distress under 42 U.S.C. §1983 which plaintiff has not alleged nor proven.

Plaintiff cannot recover damages for emotional distress. Case law prior to the Prison Litigation Reform Act had held that there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish in prison, and hence, there is no liability under § 1983 regarding such claims. See Grand Staff v. City of Borger, 767 F.2d 161 (5th Cir. 1989). The Prison Litigation Reform Act provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U. S. C. § 1983. See new 42 U.S.C. § 1997e(e); Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997). Plaintiff alleged several conditions of confinement claims but has not shown any significant injury as a result of his allegations. Plaintiff has not shown more than de minimis. Based on the above reasons and law, plaintiff is not entitled to recover for mental anguish or emotional distress under 42 U. S. C. § 1983. Therefore, his claims for emotional distress should be dismissed.

## III.  CONCLUSION

The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document #27) for summary judgment be GRANTED IN ITS ENTIRETY.

Further, IT IS RECOMMENDED that any outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 17, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**